**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| KENYADA O. GASTON, | : | |
| | : | Civil Action No. 10-4316 (JBS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| KAREN BALICKI, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Kenyada O. Gaston
Northern State Prison
P.O. Box 2300
Newark, NJ  07114

**SIMANDLE**, District Judge:

    Plaintiff Kenyada O. Gaston, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]  His claims arise out of his slip-and-fall accident at South Woods State Prison on February 17, 2010, and his subsequent medical condition.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

_____

    [1] This Court has previously granted Plaintiff leave to proceed in forma pauperis.

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that at approximately 4:30 a.m. on February 17, 2010, while he was confined at South Woods State Prison in Bridgeton, New Jersey, and during a snowstorm, he was standing in a controlled area outside his workplace in one of three separate facilities that make up South Woods State Prison, waiting for the next controlled movement.  He alleges that he slipped on the snow and ice and hit his head on the ground. Plaintiff alleges that, at that time of day, there were no medical personnel at the facility where he was located, so he lay on the ground for approximately 20 minutes until a nurse from U.M.D.N.J.[2] arrived, apparently from another facility within the prison.  With respect to these events, Plaintiff alleges that Defendant Administrator Karen Balicki, Defendant Shift Chief Floyd, and Defendant Shift Sergeant Gibson were "negligent" for failing to clear the snow and ice; he also alleges that Defendant

---

[2] The Court construes the abbreviation "U.M.D.N.J." to refer to the University of Medicine and Dentistry of New Jersey, which has provided medical services to state inmates through its University Correctional Health Care unit for several years.

Administrator Karen Balicki was "negligent" for failing to have medical staff in place in the facility he was waiting to enter.

Plaintiff alleges that when the U.M.D.N.J. nurse arrived, she did not have with her the means to remove him from the area, so he had to wait another 20 minutes for a stretcher.  He alleges that the U.M.D.N.J. nurse asked him a few questions, then he was removed to a medical unit, where he waited approximately four hours to be seen by a doctor.  He alleges that the doctor looked at the bump on his head, but did not examine anything else before prescribing one day of bed rest.

Plaintiff alleges that on February 18, 2010, the next day, he had a headache that hurt the whole left side of his head and his left eye, and which caused his vision to be blurred.  He put in a sick call slip, at which time the medical staff prescribed Excedrin for a migraine headache and scheduled him to see an optometrist.  He alleges that he was prescribed five days bed rest, during which his blood pressure was taken regularly. Plaintiff alleges that his headaches persisted, accompanied by nausea and tingling in his fingers and toes.  He alleges that his appointments to see the optometrist were cancelled, and that he saw a doctor for chronic pain on March 10, 2010, almost three weeks after his fall.  Plaintiff alleges that the doctor, on that date, scheduled him for 30 days bed rest, prescribed Tylenol 3 for pain three times a day, and scheduled him for x-rays and

therapy.  Plaintiff alleges that U.M.D.N.J. was "negligent" for failing to address his actual problems and, instead, choosing to "suppress" them with pills.  Plaintiff alleges that he has now been diagnosed with "nerve damage" as well as "post-traumatic stress."

The Complaint is dated August 3, 2010, but, apart from the allegation about his diagnosis, he makes no factual averments related to the period after March 10, 2010.  He names as Defendants Administrator Karen Balicki, Shift Chief Floyd, Shift Sergeant Gibson, and U.M.D.N.J.  He seeks monetary damages.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007; Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all

of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a

legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)
(citations omitted).  It remains true, however, that the Court
must be lenient when reviewing a pleading drafted by a prisoner
without benefit of counsel, since all pleadings must be construed
as necessary to do substantial justice.  Erickson v. Pardus, 551
U.S. at 93-94.

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34
(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane
v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg
County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

8

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,

1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).[3]

IV.   <u>ANALYSIS</u>

A.   <u>The "Conditions of Confinement" Claim</u>

Plaintiff asserts that Administrator Karen Balicki, Shift Chief Floyd, and Shift Sergeant Gibson violated his

_____

[3] To the extent any of Plaintiff's damages claims are asserted against the named defendants in their official capacities, such claims are barred by the Eleventh Amendment to the U.S. Constitution.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  <u>Quern v. Jordan</u>, 440 U.S. 332 (1979). Moreover, state officers sued in their official capacities for money damages are not "persons" within the meaning of § 1983. <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 64, 70-71 and n.10 (1989); <u>Grabow v. Southern State Correctional Facility</u>, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983). Accordingly, all claims against the named defendants in their official capacities will be dismissed with prejudice.

10

constitutional rights when they failed to ensure that slippery snow and ice was cleared from the prison grounds.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

11

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff has failed to allege any facts that suggest that the defendant administrator and other officers acted with

deliberate indifference to a substantial risk of harm to his safety when they failed to clear the snow and ice on the prison grounds.  Slippery conditions resulting from winter snow and ice are a hazard shared by the general public.  Plaintiff fails to state a claim arising out of his fall on the ice.  Cf. Dial v. Murphy, 54 F.3d 776, 1995 WL 293888 (6th Cir. 1995) (unpubl.) (mere negligence by prison officials which results in an inmate's fall on ice fails to state an Eighth Amendment claim); White v. Tyszkiewicz, 27 Fed.Appx. 314 (6th Cir. 2001) (same).  This claim will be dismissed with prejudice.

B.    The "Medical Care" Claim

Plaintiff also alleges that Defendant Administrator Karen Balicki violated his constitutional rights when she failed to ensure that medical personnel were located closer to the building where he fell, which he contends is the only location in the prison where prisoners are moving about in the early morning hours.  In addition, he contends that the nurse who responded to his fall failed to provide adequate medical care and that U.M.D.N.J. failed to provide adequate medical care during the first several weeks after his fall.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation

13

of his right to adequate medical care, an inmate must allege:
(1) a serious medical need; and (2) behavior on the part of
prison officials that constitutes deliberate indifference to that
need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  Serious medical needs include those that have been
diagnosed by a physician as requiring treatment or that are so
obvious that a lay person would recognize the necessity for
doctor's attention, and those conditions which, if untreated,
would result in lifelong handicap or permanent loss.  Monmouth
County Correctional Institutional Inmates v. Lanzaro, 834 F.2d
326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  "Deliberate indifference" is more than
mere malpractice or negligence; it is a state of mind equivalent
to reckless disregard of a known risk of harm.  Farmer v.
Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's
subjective dissatisfaction with his medical care does not in

14

itself indicate deliberate indifference.  Andrews v. Camden
County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis,
551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th
Cir. 1984).  Similarly, "mere disagreements over medical judgment
do not state Eighth Amendment claims."  White v. Napoleon, 897
F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt
to second-guess the propriety or adequacy of a particular course
of treatment ... [which] remains a question of sound professional
judgment.  Implicit in this deference to prison medical
authorities is the assumption that such informed judgment has, in
fact, been made."  Inmates of Allegheny County Jail v. Pierce,
612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation
omitted).  Even if a doctor's judgment concerning the proper
course of a prisoner's treatment ultimately is shown to be
mistaken, at most what would be proved is medical malpractice and
not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06;
White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate
'to undue suffering or the threat of tangible residual injury,'
deliberate indifference is manifest.  Similarly, where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care,' the deliberate
indifference standard has been met.  ...  Finally, deliberate

indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Here, the suggestion that Administrator Balicki violated the Eighth Amendment by not placing medical personnel near the precise location where Plaintiff fell is patently meritless. Plaintiff, himself, describes South Woods State Prison as a large

16

prison consisting of three somewhat separate facilities.[4]  While prisoners might be moving about in one particular location in the early-morning hours, nothing about that movement suggests that prison administrators are deliberately indifferent if they locate medical facilities in another area of the prison.

Nor are Plaintiff's factual allegations sufficient to suggest an Eighth Amendment violation with respect to the treatment he received on the scene of his fall, from the nurse, or that he received from other U.M.D.N.J. personnel over the next few weeks.  According to Plaintiff's allegations, the nurse asked him questions designed to elicit information about whether he had a brain injury,[5] and then had him removed to the prison medical unit.  The fact that these activities took some time, forty minutes in total, fails to suggest deliberate indifference.

Nor does Plaintiff allege any facts suggesting deliberate indifference in the treatment he received during the first three or four weeks after his fall: he was given pain medication and put on bed rest.  Plaintiff alleges no facts suggesting that his

---

[4] Similarly, the website for the New Jersey Department of Corrections describes South Woods State Prison as its largest facility housing 3,333 inmates as of August 7, 2009, a few months before Plaintiff's fall.  See http://njdoc.gov/pages/contactus.html.

[5] Plaintiff describes the questions as "did I know where I was, who was the president, and what year was it."  Plaintiff also alleges that the nurse checked his "vital signs" and asked him where he felt pain.

permanent "nerve damage" resulted from any delay in seeing an optometrist or receiving x-rays, as opposed to the fall itself. Moreover, even if he could establish that his "nerve damage" resulted from such a delay, in light of the intermediate care he received, he could state a claim for no more than medical negligence, insufficient to state a claim for cruel and unusual punishment under the Eighth Amendment.  Accordingly, the Eighth Amendment medical-care claims will be dismissed for failure to state a claim.

C.    The Application for Appointment of Counsel

       Plaintiff has submitted an application for appointment of counsel, asserting that he is indigent and that he does not understand his civil rights.

       Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
>         (1) the plaintiff's ability to present his or her own case;
>         (2) the complexity of the legal issues;
>         (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>         (4) the amount a case is likely to turn on credibility determinations;
>         (5) whether the case will require the testimony of expert witnesses;
>         (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).]  This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.
>
>         Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases.  Id. at 157.

Parham, 126 F.3d at 457-58.

19

In considering the first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience." Tabron, 6 F.3d at 156.  In addition, courts should consider whether the plaintiff has access to resources such as a typewriter, photocopier, telephone, and computer.  Id.

"Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." Parham, 126 F.3d at 459 (citing Tabron, 6 F.3d at 156 and Maclin v. Freake, 650 F.2d 885, 889 (7th Cir. 1981) (per curiam) ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.")).

In considering the ability of a plaintiff to investigate the facts, courts "should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules." Parham, 126 F.3d at 460.

In considering the credibility factor, "courts should determine whether the case was solely a swearing contest." Parham, 126 F.3d at 460.

The necessity of an expert witness "weighs heavily in favor of appointment of counsel." Parham, 126 F.3d at 460.  Finally, where other factors weigh in favor of appointment of counsel, evidence that a plaintiff has made extensive unsuccessful efforts

to obtain counsel weighs heavily in favor of appointment. Parham, 126 F.3d at 461.

Analysis of these factors reveals that appointment of counsel is not appropriate at this time.  As a preliminary matter, Plaintiff has not presented a claim with merit in fact and in law.  He has not asserted facts explaining why he is unable to present his case himself: that is, he has not alleged facts regarding his level of education or literacy, his access to resources, or his ability to detail the factual basis of his claims.  Plaintiff has not described the nature of his "nerve damage" and how that alleged disability affects his ability to litigate his claims.  He has not explained any efforts that he has made to obtain counsel on his own.

For all of the above reasons, the application for appointment for counsel will be denied, without prejudice. Nothing in this decision shall prevent Plaintiff or the Court from revisiting this issue, should Plaintiff be able to present a potentially meritorious claim.

D.   Exhaustion of Administrative Remedies

Plaintiff used a form Complaint to assert his claims.  In response to Question 5, "I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the State of Claims on page 4," Plaintiff answered "Yes," and, more specifically, "I sought

relief through the medical staff," after which he detailed his requests for sick call.  Plaintiff does not describe any other efforts to exhaust administrative remedies, and it appears, for the following reasons, that he cannot pursue this case until he exhausts the administrative remedies available to him through the Inmate Remedy System.

Pursuant to 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

(emphasis added).

Exhaustion is mandatory.  Prisoners must exhaust all "available" administrative remedies, even where the relief sought, for example, monetary damages, cannot be granted by the administrative process.  See Booth v. Churner, 532 U.S. 731, 734, 739 (2001).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Wallace v. Kato, 549 U.S. 199, 216 (2007).  Nevertheless, as with other affirmative defenses, if the allegations, taken as true, suffice to establish failure to exhaust, the complaint is subject to dismissal for failure to state a claim.  "Whether a particular ground for opposing a claim may be the basis for dismissal for

22

failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Id. at 215.

Section 1997e(a) requires "proper exhaustion," as that term is used in administrative law. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id. at 90-91. Compliance with prison grievance procedures is all that is required for "proper exhaustion." "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007) (holding that exhaustion was not per se inadequate simply because an individual later sued was not named in the grievance, where prison policy did not require the prisoner to identify a particular responsible party). See also Spruill v. Gillis, 372 F.3d 213, 231 (3d Cir. 2004) ("prison grievance procedures supply the yardstick" for determining what steps are required for exhaustion").

The Court of Appeals for the Third Circuit has held that the exhaustion requirement includes a procedural default component. See Spruill v. Gillis, 372 F.3d at 230. A court may consider extrinsic materials for determining whether a procedural default

should be excused.  See Williams v. Beard, 482 F.3d 637 (3d Cir. 2007).

In 2008, pursuant to N.J.A.C. 10A:8-1.1 to -3.6, the New Jersey Department of Corrections adopted a standardized Inmate Handbook for all of its correctional facilities, which describes the "Inmate Remedy System" set forth in N.J.A.C. 10A:1-4.1 to 1-4.9.  Supplies of the multi-part Request and Remedy System Forms are available within the correctional facility housing units and the inmate law library, and are available from social services staff members.  Social workers are permitted to assist inmates in completing the forms.

The Inmate Remedy System encompasses three types of administrative procedures:  (1) a "Routine Inmate Request," (2) an "Interview Request," and (3) an "Administrative Appeal." All inmates may use the Inmate Remedy System and must use it to "[o]btain information, [or to] present an issue, concern, complaint, or problem to correctional facility staff."  N.J.A.C. 10A:1-4.5(a)(1).  In addition, inmates must use the Inmate Remedy System to request a personal interview with a staff member or to appeal a decision with regard to a "Routine Inmate Request" or "Interview Request."  N.J.A.C. 10A:1-4.5, 1-4.6.

The Inmate Remedy System includes specific instructions regarding the types of claims that can be presented through the system; for example, the Inmate Remedy System shall not include

24

complaints relative to property loss or disciplinary charges.  In addition, the Inmate Remedy System includes certain time limits; inmates must submit an Inmate Remedy System Form within ten business days of the date the incident or issue complained of occurred, unless it is not possible to file within such period.

Once an inmate completes the form, he may place it in the appropriate Drop Box located on each housing unit.  The remedy coordinator then collects the forms, marks them as "received," and forwards them to the appropriate department or staff person for investigation and response.  The response is returned to the inmate.  If the inmate is dissatisfied with the response, or if he has follow-up questions, he may utilize the Administrative Appeal Process.  Appeal decisions are rendered by the facility Administrator and are the final decisions at the correctional facility level.  Once an inmate has pursued the Administrative Appeal Process, he has exhausted his administrative remedies under the New Jersey Department of Corrections Inmate Remedy System.

The Inmate Remedy System is designed to provide a confidential route for inmates to make the administration aware of conditions within the correctional facility and it provides correctional facility staff, senior administration officials, and the Office of the Attorney General with a specific, written method to track inmate grievances and employee responses.

In Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002), the U.S. Court of Appeals for the Third Circuit held that the precursor, and substantially similar, New Jersey Department of Corrections Inmate Handbook grievance procedure constituted an "administrative remedy" within the scope of § 1997e's exhaustion requirement.  The Inmate Remedy System effective at the time of these events is substantially similar to that at issue in Concepcion and likewise constitutes an "administrative remedy" within the scope of § 1997e's exhaustion requirement.

Here, it appears that Plaintiff did not attempt to exhaust the administrative remedies available to him through the Inmate Remedy System.  This failure provides a separate basis to dismiss the claims asserted here, without prejudice, for failure to state a claim.  As the allegations of the Complaint indicate that Plaintiff has failed to exhaust his administrative remedies, if Plaintiff moves to re-open and to file a proposed amended complaint, he must describe in that proposed amended complaint all efforts he made to exhaust the administrative remedies made available to him through the Inmate Remedy System.

V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1), for failure to state a claim.[6]  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, with respect to the claims dismissed without prejudice, the Court will grant Plaintiff leave to move to re-open and to file an amended complaint within thirty (30) days hereof.[7]  An appropriate order follows.


                                        **s/ Jerome B. Simandle**
                                        Jerome B. Simandle
                                        United States District Judge

Dated:  **May 12, 2011**

---

[6] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules, and attach a copy of his proposed Amended Complaint.

[7] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.